## DUNBARTON *v.* PALFREY & *a.*

Where the statute provided that upon a complaint made under the bastardy act,
the justice of the peace before whom the complaint was made might order the
person charged to give bond with sureties, conditioned that the respondent
should appear at the term of the court of common pleas next to be holden
within and for the county in which the offence was charged to have been com-
mitted, and answer to the complaint and abide the order of the court thereon:
*Held,* that if the respondent were present at the court specified in the bond,
and answered to the complaint, and was there ready during the term to abide
any order of the court, the condition of the bond would be kept; that such a
bond did not remain in force after the first term.

P. being arrested upon a complaint under the bastardy act, gave bond to appear at
the next term of the court of common pleas for the county, with this condition:
" Now if the said P. shall appear at said court, at the time and place afore-
said, and shall answer to said complaint, and abide the order of court thereon,
then this obligation shall be void, otherwise in full force ;" on a suit upon the
bond the defendants pleaded that P. did appear at the term of the court speci-
fied in the bond; that he answered to the complaint, and was always ready,
during the term, to abide any order of the court, yet the court did not at any
time during the term make any order on the complaint, but then and there,
without the consent of the defendants, continued the complaint to the next
term. On demurrer to this plea—*held* the plea to be good.

DEBT, upon a bond, with condition under written, which,
after reciting a complaint under the bastardy act, by the se-
lectmen of the town against Palfrey, the neglect of the
mother to complain, and an order by the magistrate on Pal-
frey to appear at the term of the common pleas, to be hold-
en at Concord, on the second Tuesday of October, 1850,
concludes as follows :—

" Now if the said John C. Palfrey, shall appear at said
court, at the time and place aforesaid, and shall answer to
said complaint, and abide the order of court thereon, then
this obligation shall be void, otherwise in full force."

The defendants pleaded as follows : " That the plaintiffs,
their action aforesaid, thereof against them, ought not to
have or maintain, because they say that said John C. Pal-
frey did appear at said term of the court of common pleas,

holden at Concord, in and for said county of Merrimack, on the second Tuesday of October, 1850, and did then and there answer to said complaint, and there was, then and always, during said term of said court, ready to abide any order of said court on said complaint, yet said court did not then, or at any time during said term of said court, make any order on said complaint, but said court did then and there, without the consent of said defendants, continue said complaint to the next term of said court, to wit, to the term of said court holden at said Concord, in and for said county; on the fourth Tuesday of March, 1851," and concluded with a verification.

To this plea the plaintiffs filed a general demurrer. And the questions arising upon the case were transferred to this court for determination.

*Fowler*, for the plaintiffs.

The question raised by the demurrer in this case, is simply whether a bond taken by a magistrate, in proceedings under the bastardy act, conditioned that the respondent shall appear at court and answer to the complaint against him, " and abide the order of court thereon," is ineffectual and void, unless some final and decisive order of court in relation thereto shall be made at the first term.

Although the form of proceedings in cases under this act is in some respects similar to those in criminal prosecutions, it has been holden throughout New England, we believe, as well as in this State, that the complaint is a civil suit, and the bond merely taken as security. *Marston* v. *Jenness*, 11 N. H. Rep. 156.

There is, then, nothing in the nature of criminal proceedings, or the practice as to recognizances in criminal prosecutions, which gives a construction to the bond in this case.

The only questions would seem to be, was the magistrate authorized to take a bond from the respondent to abide the final order of the court in relation to the proceedings against

him, and was the bond taken in apt and suitable words for that purpose ?

Section 2 of chapter 68 of the Revised Statutes, authorizes the magistrate before whom any person charged as the father of a bastard child may be brought, to " order such person to give bond to the complainant in a reasonable sum, with sufficient surety or sureties, to the satisfaction of the justice, conditioned to appear at the court of common pleas next to be holden within and for the county in which the offence is charged to have been committed, and to abide the order of said court thereon." This seems to us to have been intended to cover the whole ground, and the language could hardly have been more clear and explicit for that purpose. The respondent is to answer to the complaint, " and abide the order of court thereon." What order? Most certainly, all orders in relation to the case, and especially that, making a final disposition of the subject matter of the complaint, whenever these orders shall be made—nothing more and nothing less. It is as if the language had been, " appear at said court, and do and perform whatever the court may order and decree in relation to the subject matter of said complaint, whenever, in the progress of the business of the court, such orders and decrees shall be made."

If, then, the magistrate had authority to order such a bond, it only remains to be seen whether that authority was exercised in the case before us. The language of the condition of the bond is : " Now if the said John C. Palfrey shall appear at said court, at the time and place aforesaid, and shall answer to said complaint, and abide the order of court thereon, then this obligation shall be void, otherwise in full force." What words more apt and appropriate for the purpose could have been employed, had the design of the magistrate been, what we say it was, to bind the respondent to do and perform whatever the court might at any time order and decree in relation to the subject matter of that complaint? He is to answer to the complaint, " and

abide the order of court thereon." The only reasonable construction of the phraseology is, that he shall obey and perform whatever the court, in the progress and result of the proceedings before them on that complaint, shall determine to be right and proper for him to do and perform, agreeably to the provisions of the laws of the State.

That such is the proper construction of the bond, as well as sustaining other positions, we refer the court to *Mather* v. *Clark*, 2 Aiken's (Vt.) Rep. 209; *Blood* v. *Morrill*, 17 Vt. Rep. 598; *Simmons* v. *Adams*, 15 Vt. Rep. 677; *Merrill* v. *Prince*, 7 Mass. Rep. 396; *Johnson* v. *Randall*, 7 Mass. Rep. 340; *Adams* v. *Whitney*, 12 Pick. 196; *Mariner* v. *Dyer*, 2 Greenl. 165; and *Taylor* v. *Hughes*, 3 Greenl. 433.

But, it may be contended for the defendants, that although the condition of the bond in question is susceptible of the construction we have given it, and although that would seem to be the natural and obvious construction of it, still the third section of chapter 68 of the Revised Statutes, which provides that the complaint shall be entered at court, " and the person charged may be ordered to give bond, as aforesaid, to the satisfaction of said court, for his appearance at any future day or term, and to abide the order of court," shows that the bond taken before the magistrate was only intended to be valid until the first term of court. We deny altogether the propriety of any such inference. We say there is nothing in the third section inconsistent with our construction of the second. On the contrary, the language of that section goes to strengthen and confirm that construction. It gives the court authority to revise, at their discretion, the proceedings of the magistrate in relation to the bond. By the second section, the discretion of the magistrate is exercised as to the security to the complainant for the performance of the ultimate order of the court upon the complaint; the putative father is to give bond in a reasonable sum, with sufficient surety or sureties, to the satisfaction of the magistrate. The third section empowers the

Dunbarton v. Palfrey.

court, upon application of either party, to revise the doings of the magistrate in this particular. If he has required a bond in an unreasonable or insufficient sum, or taken insufficient sureties, the court, in their discretion, may order a new bond, reducing or increasing the penal sum, or requiring additional or more responsible sureties, to the satisfaction of the court. All that the legislature intended by the third section, was to give the court power, at their discretion, to revise the proceedings of the justice in the matter of security to the complainant. And this is reasonable and proper. But any construction of this section which makes it imperative on the court to require a new bond, would, necessarily, in a vast majority of cases, be extremely inconvenient and oppressive to the respondent; and for this, among other reasons; the examination before the magistrate is usually in the neighborhood where the respondent and his friends reside, and hence there is little difficulty in his procuring sureties. But, in most cases, the court sits in a part of the county remote from the residence of the respondent and his friends, rendering it inconvenient and expensive for him to procure sureties there. Moreover, if the bond taken by the magistrate to abide the order of court is only valid till the first term, that taken by the court at that term, by parity of reasoning, the language authorizing a bond being the same in both cases, could only be valid until the next succeeding term ; and so the respondent must be subjected to the exceeding hardship of renewing his bonds from term to term, as if under indictment for a high crime ; whereas the only object of the statute is to provide security for the complaint as regards the support of the child, which object is just as well and just as effectually attained, if the magistrate takes one in a competent sum, with sufficient sureties, by the single bond ordered by the justice, as by a thousand required by the court. It seems to us the legislature never could have contemplated, in a civil case, anything so onerous and oppressive in the way of simple security for a pecuniary lia--

bility, as would be the construction of this section contended for by the defendants' counsel.

Further, the construction of the bond and statute for which we contend, we understand to have been the frequent, if it may not yet be regarded as the settled construction of the court of common pleas, in the various counties of this State.

If the construction of the bond for which we contend, should not be sustained by the court, we think it might well be argued that the order for continuance, set forth in the plea as made by the court, should be held to include within it all the subsequent proceedings until final judgment; so that, the respondent having failed to comply with the final order of the court in the case, may well enough be said to have failed to abide the order of court, made at the first term. It might also, we think, with propriety be contended, that the proceeding in this case, being by the selectmen, in behalf of the town, under the seventh section of chapter 68, there is no express provision in relation to the taking of the bond, either before the magistrate or in court, and, therefore, the bond in question might be held valid, at common law, as taken under that. Section 8 of chapter 68 says only that the proceedings where the selectmen complain shall be the same, in all respects, as if the mother had complained, omitting to say that the same security shall or may be required.

We advert to these positions as entitled to the consideration of the court, in the event of their being of opinion that we are mistaken in our views on the other points.

*Bartlett* and *Perley,* for the defendants.

Our positions are these.

I. The condition was fulfilled at the October term. The bond did not and could not bind the defendants for Palfrey's performance of the order of the court. It is only for his appearance and being in readiness to receive the

order of the court. Act of February 1791, § 4; Laws of 1815, 353; Act of June, 1827, § 1; Laws of 1830, 295; Rev. Stat. ch. 68, §§ 2, 3, 5; *State* v. *Chesley*, 4 N. H. Rep. 369.

Like bail, the only object is to secure an effectual appearance, as much as if the party had remained in custody. 1 Chit. Crim. Law 106; Bac. Abr. Bail L.; 10 Wend. 433.

And the condition could only be broken by a default, when regularly called, and that at the October term. *State* v. *Chesley*, 4 N. H. Rep. 369; *State* v. *Richardson*, 2 Greenl. 115; *People* v. *Hainer*, 1 Denio 454; *People* v. *Green*, 5 Hill 650; *Keephaver* v. *Commonwealth*, 2 Penn. Rep. 240.

Though the condition be held to extend to performance, it can only be performance at the October term. The recital limits the condition. Story on Contracts § 644.

Besides, in the condition, the words " at the time and place aforesaid" limit the whole, especially as by statute the words " to answer and abide" are only descriptive of the appearance. Our statutes, also, contemplate an order at the first term.

Also the terms of the condition show that it could not apply to any order after the first term. It is conditioned for appearance at the October term only. No order could be made at the next term, unless Palfrey appeared. *Jordan* v. *Lovejoy*, 20 Pick. 89.

Then, as no order could be made without Palfrey's appearance, and the bond was not conditioned for his appearance at the next term, it was not conditioned for abiding any order at that term.

Palfrey did appear and answer and remain at the October term, in readiness to receive any order, and as the court made none, there could be no breach. *State* v. *Richardson*, 2 Greenl. 115; *People* v. *Green*, 5 Hills 650; *People* v. *Hainer*, 1 Denio 454.

A continuance is no order; it is a mere leave to depart and come again. See same authorities last cited.

II.   The court could not continue the bond.   They have no power to continue a recognizance.   *People* v. *Hainer*, 1 Denio 454 ; *People* v. *Green*, 5 Hill 650 ; *State* v. *Chesley*, 4 N. H. Rep. 369 ; *State* v. *Richardson*, 2 Greenl. 115 ; *Keephaver* v. *Commonwealth*, 2 Penn. 240.

And if the court had the power to continue a recognizance, a bond and . a recognizance stand on a different footing.   *Merrill* v. *Prince*, 7 Mass. Rep. 396 ; *People* v. *Green*, before cited.

A bond is a mere matter in *pais*.   Its condition, once fulfilled, it is at an end, and cannot be continued.   *People* v. *Green*.

And our statutes contemplate no continuance, but an order.   Act of 1791, § 4 ;   Act of 1827, § 1 ;   Rev. Stat. ch. 68, §§ 2, 3, 5.

EASTMAN, J.   Whether the condition of the bond upon which this suit was instituted, has been broken or not, depends upon the construction to be given to the second and third sections of chapter 68 of the Revised Statutes, taken in connection with the bond itself.

The second section is as follows : " The justice before whom such person shall be brought, if he see fit, may order such person to give bond to the complainant in a reasonable sum, with sufficient surety or sureties to the satisfaction of the justice, conditioned to appear at the term of the court of common pleas, next to be holden within and for the county in which the offence is charged to have been committed, to answer to such complaint, and to abide the order of said court thereon, and in default thereof, may commit him until such order is performed."

The third section provides for the making of the copies by the justice, and the return of the same to the court, on or before the first day of its session, and then sets forth that " said complaint shall be entered at said term, and the person charged may be ordered to give bond as aforesaid, to

the satisfaction of said court, for his appearance at any future day or term, and to abide the order of the court." The section also provides for a trial by the court or by the jury, if either party shall request it.

Now the question is, does such a bond, taken by the magistrate, continue in force after the first term of the court, the term at which the complaint is entered, or is it fulfilled if the respondent appears at the first term, and abides all orders made at that term ?

The position of the plaintiffs is, that it does continue in force after the first term, and that if the complaint be continued, the bond follows of course; and that any failure to appear and comply with the orders of the court the second term, is a breach of the condition. If this position be correct, the defendants are liable in this action.

Both the statute and the condition of the bond provide, in terms, for an appearance only at the first term of the court. No power is given to the magistrate to take a bond for any other or further appearance, and no power given to the court to continue the bond; and unless we can hold the "continuance" of the action to be an order of the court contemplated by the statute, so that the bond may be thereby continued in force till a subsequent term, the plaintiffs must fail.

We have examined the argument of the plaintiffs with some care, and have considered those sections of the statute with an inclination to give them the construction contended for by the plaintiffs, for we apprehend that, in practice, such a construction has been adopted in not a few cases ; but the more we reflect upon it, the more are we satisfied that the construction is incorrect. The phraseology, both of the bond and the statute, appears to us to be too explicit to admit of this construction. In the words of the statute, it is " to appear at the term of the court of common pleas *next* to be holden." In the words of the bond, it is " to appear at said court, and at the time and place aforesaid." And it is " to

abide the order of said court thereon." It is not to appear at any other time and place, nor at any other term, nor from term to term ; nor is it to abide any order made at any other term. Probably this provision was enacted in view of the analogy between proceedings arising out of complaints of this kind and those in criminal cases, it being necessary, in criminal proceedings, to have the recognizance renewed or a new one taken at each term. It may be an inconvenience, as suggested by counsel, to have the bonds renewed at each term, but it is an inconvenience which the Legislature have seen fit to impose upon those who are so unfortunate or vicious as to have complaints of this kind made against them. In some cases it may not, in truth, be an inconvenience, for there are doubtless many persons who would be willing to enter into bonds simply for the appearance of the respondent at the first term, who would not consent to incur any liability beyond that term.

If the party is present at the first term of the court, and abides all orders, whatever they may be, which the court may legally make, and which are made at that term, we think that the condition of the bond must be held to be thereby kept; and that the bond does not remain in force so as to cover any orders made at the subsequent term, or for the respondents' appearance after the first term. In this conclusion we are sustained by several cases cited by the defendants' counsel. *People* v. *Green*, 5 Hill 647 ; *People* v. *Hainer*, 1 Denio 454 ; *State* v. *Richardson*, 2 Greenl. 115 ; *Keephafer* v. *Commonwealth*, 2 Penn. Rep. 240.

A mere continuance, therefore, of the case, cannot, we think, be regarded as an order contemplated by the statute. But even if it were, and the respondent acquiesced in the continuance, it does not on that account follow that a simple continuance of the action can operate, *ipso facto*, as a continuing in force of the bond, so as to require the sureties to answer for an appearance of the respondent at the next term. The bond is for the appearance only at the first

term, and abiding the orders incident thereto, and the sureties are not answerable, (unless in case of the failure to appear,) for any sum that the respondent may be ordered to pay for the support of the child. This appears from the fifth section of the same chapter (chapter 68 Revised Statutes,) where the provision is made that, in case the respondent shall be found chargeable, the court may order him to pay such sum as they may deem reasonable, to the mother, or selectmen of the town, as the case may be, and also to pay costs of prosecution, and may order him to give security to save the town harmless for the maintenance of the child ; and in case of neglect or refusal to obey such orders, the court may commit him until the same be obeyed—the statute evidently contemplating that the orders shall be enforced by commitment, as it is believed the practice has always been in this State. *Woodcock* v. *Walker*, 14 Mass. Rep. 386.

The decisions in Massachusetts, which show that the bond may be continued in force to a succeeding term, were made upon a statute having provisions to that effect, and, of course, a bond, taken by virtue of the statute, would be good, according to the provisions of such statute. The Massachusetts statute provides that the court may order the continuance or renewal of the bond, &c., and that the continuance of such bond to the next court, entered thereon by the order of the court, (unless the surety or sureties shall object thereto, shall have the same force and effect as a recognizance taken in court for the next term.

The first part of the Massachusetts statute, giving the power to the justice to take the bonds, is almost identical with ours; and the second part expressly gives the court power to continue the bonds, provided the sureties do not object. Now if the taking of the bond by the magistrate, with condition to appear and abide the order of the court and the continuance of the action under such bond, can operate to keep in force the bond after the first term, as the

plaintiffs contend, then the courts of Massachusetts might, independent of the provision giving them the power to continue or renew the bond, in case the sureties did not object, continue the action, and such continuance would be an 'order that would operate to hold both principal and sureties for the principal to appear and abide all orders at the subsequent term, and the provision of the statute would be entirely unnecessary.

But notwithstanding this express provision of the Massachusetts statute to continue the bond in force at a succeeding term, yet both the statute and the court say that this cannot be done against the consent of the sureties. The Massachusetts decisions are strong indirect authority, sustaining the construction which we have put upon this bond. *Adams* v. *Whitney & als.* 12 Pick. 198.

But in addition to the express terms of the condition of this bond and the provisions of the second section of the statute under which it was taken, the provisions of the third section would seem to negative the correctness of the plaintiffs' position. The provisions of that section, by which the person charged may be ordered to give bond for his appearance at a future time, and to abide the order of the court, would seem to be entirely useless, if the plaintiffs' views are correct. It would be a work of supererogation to provide for the ordering of new bonds, when the bonds already taken would be in force by the mere order of the continuance. The suggestion of counsel that this provision was intended only to give the court a supervisory power over the bonds already taken, and to order new ones or not, as they might deem expedient, cannot, in our opinion, be correct.

But we will pursue the subject no further. There must be judgment, upon the demurrer, for the defendants.