EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Oscar Martínez Hernández<br><br>v.<br>Compañía de Fianzas de P.R.<br><br>Recurrida | Certiorari<br><br>2003 TSPR 3<br><br>158 DPR \_\_\_\_ |

Número del Caso: CC-2002-192

Fecha: 22 de enero de 2003

Tribunal de Circuito de Apelaciones:
            Circuito Regional III

Juez Ponente:
            Hon. Ismael Colón Birriel

Oficina del Hon. Procurador General:
            Lcda. Lisa M. Durán Ortiz
            Procuradora General Auxiliar

Abogado de la Parte Recurrida:
            Lcdo. Luis Bestard

Materia: Asesinato en primer grado y otros

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

CC-2002-192

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.

Oscar MartínezHernández

                CC-2002-192 Certiorari

      **v.**

Compañía de Fianzas de

P.R.

    Recurrida

**Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO**

        San Juan, Puerto Rico a 22 de enero de 2003.

I

        Nos corresponde determinar si una sentencia confiscatoria de una fianza criminal devenga intereses legales conforme lo dispuesto en la Regla 44.3 de Procedimiento Civil. 32 L.P.R.A. Ap. II.

II

El 9 de diciembre de 1997 la Compañía de Fianzas de Puerto Rico (en adelante, "la compañía fiadora" o "la recurrida") suscribió un contrato de fianza criminal ante el Tribunal de Distrito, Sala de San Juan, por la suma de $96,500.00. Esto, con el propósito de garantizar la presencia del Sr.

Oscar Martínez (en adelante, "Sr. Martínez") durante el procedimiento criminal habido en su contra.[1] El contrato rezaba, en lo pertinente,

> la fiadora, por la presente responde de que el susodicho acusado comparecerá a contestar al cargo ante cualquier tribunal en que se estuviere sustanciando y de que en todo tiempo estará pronto a acatar las órdenes y providencias del Tribunal, y que comparecerá a la vista preliminar en los casos apropiados, y si fuere declarado culpable, de que comparecerá al pronunciamiento de la sentencia y se someterá a la misma; y si dejare de estar y pasar por cualquiera de estas condiciones, la fiadora se obliga a pagar al Estado Libre Asociado la cantidad [pactada].

Ante la incomparecencia del Sr. Martínez al acto de pronunciamiento de sentencia, el Tribunal de Primera Instancia (en adelante, "TPI") requirió a la compañía fiadora mostrar causa por la cual no debía ser confiscada la fianza prestada. Evaluada su comparecencia, el 20 de marzo de 2001 el TPI dictó sentencia

---

[1] Contra el Sr. Martínez se radicaron cargos por Asesinato en Primer Grado, e infracción a los Artículos 6 y 8 de la Ley de Armas.

confiscando el importe de aquella.[2] La sentencia fue notificada el 30 de marzo de 2000.

Así las cosas, el 19 de abril de 2000, la División de Confiscaciones del Departamento de Justicia del Estado Libre Asociado de Puerto Rico presentó una *Moción en Solicitud de Ejecución de Sentencia* ante el TPI. Reclamó el pago de los $96,500.00 adeudados por concepto del contrato de fianza. Asimismo, solicitó la imposición de intereses legales computados a razón del 9.5%, contados los mismos desde la fecha del pronunciamiento de la sentencia hasta que la misma fuese satisfecha. El TPI procedió a dictar la correspondiente *Orden de Expedición de Mandamiento* conforme a lo intimado. No obstante, tras varios trámites procesales,[3] dicho foro dejó sin efecto la imposición de intereses legales sobre el monto de la fianza confiscada.

Inconforme, el Procurador General, en representación del Pueblo de Puerto Rico (en adelante, "el peticionario" o "el Procurador"), presentó un recurso de *certiorari* ante el Tribunal de Circuito de Apelaciones (en adelante, "TCA"). Le imputó al TPI haber errado al resolver que una sentencia confiscatoria de una fianza criminal no devengaba intereses legales a tenor con las disposiciones de la Regla 44.3 de Procedimiento Civil, *supra.*

---

[2] Con anterioridad, el TPI había dictado una sentencia confiscatoria de fianza por la cantidad de $1,100,000.00. No obstante, a petición de la compañía fiadora, ésta se dejó sin efecto respecto al monto de la fianza que figuraba en la misma.
[3] La compañía fiadora presentó una *Réplica a Moción en Solicitud de Ejecución de Sentencia*, a través de la cual cuestionó la imposición de intereses en el trámite de ejecución de la sentencia. Subsiguientemente, la División de Confiscaciones del Departamento de Justicia presentó un escrito de Dúplica. Considerados los anteriores, el TPI celebró una vista para dilucidar las posiciones de las partes sobre el particular.

Mediante resolución de 31 de enero de 2002, dicho foro denegó la expedición del auto solicitado. Razonó que, si bien es cierto que el trámite de ejecución de una sentencia de confiscación de fianza se realiza conforme lo dispuesto en las Reglas de Procedimiento Civil, *supra*, el asunto referente al interés devengado por la misma es uno desligado a la cuestión de su ejecución.[4]

Insatisfecho con dicho dictamen, el peticionario acudió ante nos mediante recurso de *certiorari*, señalando la comisión del mismo error, a saber:

> [e]rró el Tribunal de Circuito de Apelaciones al resolver que no proceden los intereses legales sobre el monto de una sentencia sobre confiscación de fianza penal, aun cuando la sentencia es de carácter civil y ordena el pago de dinero, por lo que está reglamentada por las Reglas 51 y 44.3 de Procedimiento Civil, las cuales disponen expresamente que dicha sentencia devenga intereses legales.

Mediante resolución de 5 de abril de 2002 expedimos el auto solicitado. Tanto el Procurador como la compañía fiadora han presentado sus respectivos alegatos. Por medio de su comparecencia, la compañía fiadora nos ha advertido que, el pasado 22 de mayo de 2002 le satisfizo al peticionario la cantidad de $96,500.00 correspondiente a la fianza confiscada en el caso de marras. Queda pendiente pues, la procedencia de la imposición de

---

[4] Resolución del Tribunal de Circuito de Apelaciones de 31 de enero de 2002. Apéndice del recurso de *certiorari*, págs. 149-156.

una suma por concepto de intereses sobre sentencia, asunto que consideramos en el presente recurso. Procedemos a resolver.[5]

### III

Sabido es que en Puerto Rico el derecho a fianza es uno de rango constitucional. La Sección 11 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A., consagra el derecho de todo acusado a permanecer en libertad bajo fianza antes de mediar un fallo condenatorio y a que la fianza que se le imponga no sea excesiva.[6]

La fianza es un modo de implementar la presunción de inocencia, pues sería un contrasentido encarcelar a una

---

[5] Tomamos conocimiento de que existe una marcada inconsistencia entre las decisiones de los distintos paneles que componen el Tribunal de Circuito de Apelaciones, en lo que a la controversia que tenemos ante nos respecta. Algunos han negado la procedencia de la imposición de intereses a sentencias como la que motiva el recurso de autos. Véase, *Pueblo v. Compañía de Fianzas*, KLCE200101211, Circuito Regional III Arecibo/Utuado; *Pueblo v. García Almeida*, KLCE0101001, Circuito Regional IV Aguadilla/Mayagüez. Mientras, otros han adoptado la posición contraria, avalando la imposición de los intereses. Véase, *Pueblo v. Torres Vargas y otros*, KLCE0101187; KLCE0101216; KLCE0101218; KLCE0101253; KLCE0101303; KLCE0101327; KLCE0101337; KLCE0101360 (consolidados), Circuito Regional de Ponce/Arecibo; *Pueblo v. Díaz Rivera*, KLCE200101449, Circuito Regional de Bayamón; *Pueblo v. Balbuena Castro*, KLCE020031, Circuito Regional de Carolina/Fajardo; *Pueblo v. Luciano González*, KLCE0200047, Circuito Regional de Ponce/Aibonito.

[6] Anterior a nuestra Constitución, allá para 1917, la Carta de Derechos de la Ley Jones disponía el derecho de toda persona a prestar fianza para quedar en libertad provisional antes de la convicción, excepto en crímenes capitales, cuando la prueba fuera evidente o la presunción grande. Esta excepción desapareció cuando se abolió la pena de muerte en el año 1929. I. Betancourt y Lebrón, *Los Derechos del Acusado*, San Juan, 1975.

persona que se considera inocente y que eventualmente puede ser exonerada de culpa. INFORME ESPECIAL SOBRE EL DERECHO A LA VIDA, LA SEGURIDAD Y LA LIBERTAD PERSONAL FRENTE A LOS PROBLEMAS DE LA DELINCUENCIA, Comisión de Derechos Civiles, 20 de marzo de 1968. De conformidad con lo anterior, ya hace varias décadas atrás aclaramos que la fianza no se fija con el propósito de castigar a la persona acusada, sino con el objetivo de asegurar la presencia de ésta ante el tribunal cuando así le sea requerido. *Marrero v. El Pueblo*, 31 D.P.R. 901 (1923). Así lo hemos ratificado en ocasiones posteriores. Véase, *Pueblo v. Soto Ortiz*, res. el 29 junio de 2000, 151 D.P.R._____, 2000 TSPR 108, 2000 JTS 119; *Pueblo v. Newport Bonding & Surety Co*, 145 D.P.R. 546 (1998).

La prestación de la fianza garantiza pues, la sumisión del acusado a todas las órdenes, citaciones y procedimientos ante el tribunal, surgidas en virtud del procedimiento criminal habido en su contra. *Pueblo v. Cía. de Fianzas de P.R.*, 139 D.P.R. 206 (1995). Es mediante el contrato de fianza que el fiador se compromete con el Estado a garantizar la presencia del imputado de delito ante el tribunal. *Pueblo v. Félix Avilés*, 128 D.P.R. 468 (1991); *Pueblo v. Newport Bonding & Surety Co*, supra. La fianza se mantiene en vigor desde que se admite por cualquier magistrado y cubre todo el proceso judicial hasta su conclusión, ya sea por razón del pronunciamiento y ejecución de sentencia, o por la absolución del acusado. *Pueblo v. Soto Ortiz*, supra.

Ahora bien, toda vez que es el Estado el que originalmente tiene la responsabilidad de mantener la custodia de aquellos que son acusados de transgredir la ley, consintiendo en transferirla al fiador cuando éste así lo solicita, el incumplimiento del fiado

es el incumplimiento del custodio, quien deberá responder con la garantía ofrecida. Véase, Exposición de Motivos Ley Núm. 55 de 1 de julio de 1988.

Vemos pues que, la responsabilidad del fiador no se limita a la mera prestación de la fianza, sino que estará obligado a tomar parte activa en todo el proceso penal para estar al tanto del paradero del imputado de delito, y asegurar su sumisión al proceso criminal pendiente. De no cumplir el fiador su compromiso con el Estado, vendrá obligado a pagarle a éste la cantidad consignada como fianza. *Pueblo v. Félix Avilés*, supra.

A tenor con estos principios, anteriormente hemos resuelto que la incomparecencia del acusado a alguna de las instancias del proceso sin que medie razonable justificación, constituye causa suficiente para que se decrete la confiscación de la fianza a favor del Estado. *Pueblo v. Newport Bonding & Surety Co*, supra.

A esos efectos, la Regla 227 (a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, provee un mecanismo para los casos en que sea necesaria la confiscación de la fianza prestada. La misma dispone que, en caso de que el imputado no compareciere, el tribunal emitirá una orden concediéndole oportunidad a la compañía fiadora para que muestre causa por la cual no se deba confiscar la fianza acordada. De no mediar una explicación satisfactoria para el incumplimiento, el tribunal procederá a dictar una sentencia sumaria contra el fiador y confiscará el importe de la fianza. La sentencia en cuestión advendrá firme y ejecutoria pasados cuarenta (40) días de haberse dictado. No obstante, si dentro de ese período de cuarenta (40) días el fiador llevara al acusado

ante la presencia del tribunal, éste dejará sin efecto la sentencia dictada. *Pueblo v. Cía de Fianzas*, supra.

En lo pertinente a la controversia de autos, la antedicha regla ordena:

> **[c]onvertida en firme y ejecutoria una sentencia confiscando la fianza o el depósito, el secretario de tribunal, sin necesidad de ulterior requerimiento remitirá inmediatamente copia certificada de dicha sentencia al Secretario de Justicia para que proceda a la ejecución de la misma de acuerdo a la Regla 51 de las Reglas de Procedimiento Civil para el Tribunal General de Justicia, e igualmente remitirá al Secretario de Hacienda el depósito en su poder.(Énfasis suplido).**

Como puede notarse, la citada Regla exige que el Secretario de Justicia ejecute la sentencia de confiscación del modo ordinario en que se ejecutan las sentencias civiles; es decir, solicitando el correspondiente mandamiento de ejecución. El mandamiento especificará los términos de la sentencia, y si ésta ordenare el pago de dinero, expresará la cuantía y la cantidad pendiente de pago. Véase, LA FIANZA: INFORME DEL SECRETARIADO DE LA CONFERENCIA JUDICIAL DE PUERTO RICO, sexta sesión plenaria, noviembre de 1979, a la pág. 82.

Esto es así toda vez que, a pesar de que las Reglas de Procedimiento Criminal contienen las disposiciones relacionadas al tema de la fianza criminal y su confiscación, el procedimiento para declarar confiscada la misma y hacerla efectiva es de

carácter civil, aunque aquella se haya prestado como parte de un procedimiento criminal. *Pueblo v. Del Valle*, 35D.P.R. 478 (1926).[7]

Nótese que, si bien la sentencia confiscatoria de una fianza criminal y su eventual ejecución emanan de un caso criminal, dicho procedimiento no involucra la inocencia o culpabilidad del acusado, ni supone la continuación del procedimiento criminal en el cual se prestó la fianza; tampoco presupone la imposición de un castigo al fiador, sino que entraña una acción civil cuya finalidad es hacer cumplir la obligación del fiador con el Estado, nacida en virtud del contrato de fianza otorgado. 8A Am. Jur. 2d § 113, a la pág. 403.[8]

Aclarado lo anterior, la Regla 51 de Procedimiento Civil, a la cual nos remite la Regla 227 de Procedimiento Criminal, regula el proceso de ejecución de sentencia, al disponer en el inciso 51.1:

> [l]a parte a cuyo favor se dicte una sentencia, podrá ejecutarla mediante el procedimiento fijado en esta Regla 51, en cualquier tiempo dentro de cinco (5), años de ser firme la misma. Expirado dicho término, podrá ejecutarse la

---

[7] Igual interpretación prevalece en otras jurisdicciones. A manera de ejemplo, véase,; *United States v. Abernathy*, 757 F2d 1012, 1014 (9no Cir. 1985), "an action to enforce a bond forfeiture, which is essentially an action on a contract between the government and the defendants, is a civil action…"; *United States v. Plechner*, 577 F2d 596, 598 (9no Cir. 1978), "[a] bail bond is a contract between the government and the defendant and his surety. Upon forfeiture, the surety becomes the government's debtor. Thus, the government's motion for judgment was 'civil, not criminal, in nature.'". Véase además, State *v. Wheeler*, 508 SO 2d 1384, 1386 (La. 1987), "an action to forfeit a bail bond […] is a civil proceeding and subject to the rules of civil procedure."; *People v. Wilcox*, 349 P2d 522, 524 (Cal. 1960), "in relationship to criminal prosecution the forfeiture of a bail is an independent, collateral matter, civil in nature…".

[8] Véase al respecto, *Collins v. Collins*, 173 F3d 924, 932 (4to Cir. 1999), "These bail bond forfeiture obligations, as to him, arose from a purely financial and contractual agreement."

> sentencia mediante autorización del tribunal a moción de parte y previa notificación a todas las partes.[...]

En su alegato ante nos, el Procurador alega que, dado el hecho que una sentencia de confiscación de una fianza criminal impone el pago de una suma de dinero como consecuencia del incumplimiento de las obligaciones contraídas en el contrato de fianza, dicho dictamen conlleva la imposición de intereses a su favor.

Mientras, la compañía fiadora entiende que, dada la naturaleza declarativa de la sentencia de confiscación, y toda vez que la acción de confiscar implica la adquisición propietaria de un haber del cual ya se ostenta su posesión, el monto a ser confiscado e incautado por el Estado debe limitarse a lo consignado como fianza y nada más. A esos efectos, añade que, cuando el importe de la fianza se depositó en efectivo y éste es confiscado, lo que se deberá remitir al Secretario de Hacienda es la cantidad depositada y nada más; igualmente, cuando la fianza documental se confisca, la cantidad a ser satisfecha por la fiadora o incautada por el Estado deberá limitarse a aquella consignada como fianza.

Nos encontramos, sin duda alguna, ante un asunto en el cual debemos suplir una laguna legislativa, toda vez que, pese a que la Regla 227(a) de Procedimiento Criminal, *supra*, refiere el asunto de la ejecución de la sentencia confiscatoria de fianza criminal a lo contemplado por la Regla 51 de Procedimiento Civil, *supra*, cierto es que no se dispone con claridad el procedimiento a seguir para hacer efectiva dicha ejecución. Asimismo, si bien no ordena, tampoco proscribe la imposición de intereses sobre la sentencia dictada.

Debemos advertir que la doctrina se encuentra marcadamente dividida en cuanto a este particular. Décadas atrás, otras jurisdicciones se inclinaban a disponer que su facultad estaba limitada a ordenar la confiscación de la fianza, lo cual no incluía el poder de ordenar remedios adicionales. Véase, *United States v. Broadhead*, 127 U.S. 212 (1888). Varios estados han avalado dicha posición. Véase, *State V. Morse*, 105 N.W. 2d 572

(Neb. 1960); *People v. Perisini*, 111 N.E. 253 (N.Y. 1916). No obstante, otros han marcado una tendencia a reconocer legislativamente la imposición de intereses a este tipo de dictamen. Véase, *Wiegand v. State*, 685 A.2d 880 (Md. 1996); *Dees v. State of Texas* 865 S.W.2d 461 (Tex. 1993). Finalmente, otros han dejado en suspenso la controversia. Véase, *Ex Parte Serns*, 410 SO2d 86 (Ala. 1992).

Se nos hace necesario pues, evaluar la naturaleza del contrato otorgado por la compañía fiadora y las consecuencias que su incumplimiento acarrea.

**IV**

El contrato de fianza criminal se formaliza acorde con lo prescrito en las Reglas de Procedimiento Criminal, *supra,* las cuales disponen, en lo pertinente al caso ante nos, que "toda fianza será suscrita, o reconocida, ante un magistrado o secretario, según corresponda, bien por una compañía autorizada para prestar fianzas en Puerto Rico; bien por el Director Ejecutivo del Proyecto de Fianzas Aceleradas [...], al cual se le considerará, para los efectos de esta regla, como una compañía autorizada para prestar fianzas en Puerto Rico, incluyendo específicamente, pero sin que ello se entienda como una limitación, la potestad de prestar fianzas documentales o en efectivo...". Regla 220 de Procedimiento Criminal, *supra*.[9]

Bastante se ha debatido sobre la necesidad y conveniencia de las compañías fiadoras en nuestro sistema. No estamos ajenos a la realidad que se vive con éstas, las cuales han provocado

---

[9] Igualmente, el contrato de fianza suscrito por una compañía autorizada para prestar fianzas en Puerto Rico está regulado

grandes sinsabores a la administración de la justicia. Las mismas funcionan de manera análoga a las compañías de seguros; hay una concentración de fondos en una entidad común que pagará en aquellos casos en donde se violen las condiciones que dieron lugar a la fianza. Como toda aseguradora, es su obligación hacer efectivas las reclamaciones que se hagan contra el fondo común. Dicha reclamación, en la situación particular de las compañías fiadoras, viene por vía de una sentencia dictada en su contra dentro del proceso criminal contra el fiado que no comparece. Véase, INFORME DEL SECRETARIADO DE LA CONFERENCIA JUDICIAL SOBRE LA FIANZA, noviembre 1979; MANUAL PARA LOS PROCEDIMIENTOS DE FIJACIÓN, ADMISIÓN Y CONFISCACIÓN DE FIANZA, Secretariado de la Conferencia Judicial, Diciembre 1979; ESTUDIO SOBRE LA FIANZA CRIMINAL, Oficina del Comisionado de Seguros, enero de 1974.[10]

---

por el Código de Seguros, en aquella parte relativa a los seguros de garantía. 26 L.P.R.A. 409 (3).

[10] **En lo que al funcionamiento y eficacia de las compañías fiadoras concierne, debemos destacar que, desde el punto de vista del imputado de delito, la fianza criminal no exime al fiado de la responsabilidad para con la compañía fiadora. Previendo la eventualidad de tener que pagar en caso de incomparecencia del fiado, las compañías fiadoras**

continúa...

[10] ...continuación

**le exigen el pago de primas y el otorgamiento de garantías colaterales para cubrir el monto de la fianza, de manera que su riesgo quede asegurado. Mientras, desde el punto de vista del Estado, las compañías fiadoras no cumplen su compromiso de procurar la comparecencia del imputado de delito o, en su defecto,**

Ahora bien, con respecto a la controversia que aquí nos concierne, debemos reconocer que, no empece la naturaleza *sui generis* del contrato de fianza suscrito por este tipo de compañías, y el hecho de que su existencia y eficacia están supeditadas a la existencia de un procedimiento criminal, éste no pierde su carácter de obligación contractual accesoria, consistente en el otorgamiento de una garantía de incuestionable carácter monetario.[11]

Mediante el contrato de fianza el gobierno obtiene del fiador la promesa de que éste pagará la cantidad pactada como fianza en

---

**pagar el importe de la fianza, muy a pesar que, ante todo, éstas funcionan con una licencia concedida por el Estado y están obligadas a cumplir con el mandato de ley, el cual supone que éstas tengan los fondos disponibles para pagar llegado el momento para ello. De otra parte, resulta muy difícil, sino imposible, cobrar lo adeudado por estas compañías en concepto de sentencias firmes y confiscaciones. A esos efectos, estudios reflejan que para el año 1973 cinco compañías fiadoras adeudaban al Estado una suma superior a los dos y medio millones de dólares por concepto de fianzas criminales confiscadas que no se habían podido ejecutar. Ya para 1980 la suma ascendía a los once millones de dólares. Esta situación ha provocado que el Estado, en un intento de aminorar el mal, procure acuerdos transigiendo lo adeudado por sumas insignificantes. *Íd*. La situación al día de hoy no ha cambiado mucho.**

[11] Sobre la naturaleza *sui generis* del contrato de fianza, véase, a fines ilustrativos, *In Re Hickman*, 260 F3d 400 (5to Cir. 2001), a la pág. 406, "[a] bail contract is *sui generis*. While treated as a contract under state law in many respects, a bail bond is certainly distinguishable from the typical contract."

caso de que el acusado incumpla con las condiciones impuestas por el tribunal. Advenido dicho incumplimiento por parte del acusado, y agotado el remedio provisto en pro del fiador en la Regla 227 (a) de Procedimiento Criminal, *supra*, la opción del Estado no será otra que procurar que el tribunal dicte sentencia ordenando el pago de la suma de dinero correspondiente a la fianza confiscada.

Sobre este particular, ilustrativo nos parece *In Re Hickman*, supra, el cual apunta, a la pág. 402,

> [u]nder [the bail bond] agreement, the state does not require payment of the entire amount of the bond in order to secure release. Rather, the State requires a contractual promise to pay the amount of the bond by the defendant or his surety if the defendant fails to comply with the conditions of the bond. **Upon default, the State merely seeks a money judgment** as damages for breach of contract against the obligor under the bond.(Énfasis nuestro).

Si bien lo pactado como fianza en este tipo de contratos consiste de una suma cierta predeterminada que no pacta el pago de intereses, una vez ésta es confiscada conforme a derecho, se convierte en una deuda a cobrar, y como tal, el fiador se ve obligado a su pago, así como a los intereses correspondientes.[12]

---

[12] **Nótese que, en el caso de la fianza documental, como aquella otorgada en el caso de autos, el Estado no tiene dinero alguno en su poder, lo que tiene es la promesa escrita del fiador, mediante la cual se le garantiza que, en caso de incumplimiento del fiado, se le reconoce su acreencia sobre el monto de fianza pactado. Incumplidos**

continúa...

Aclarado lo anterior, la Regla 44.3 de Procedimiento Civil, *supra,* advierte que:

> [s]e incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que esté en vigor al momento de dictarse la sentencia, en toda sentencia **que ordena el pago de dinero**, a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó sentencia y hasta que ésta sea satisfecha, incluyendo costas y honorarios de abogado. El tipo de interés se hará constar en la sentencia. (Énfasis nuestro).

Anteriormente hemos resuelto que los intereses contemplados por la aludida regla forman parte de toda sentencia civil que ordene el pago de dinero, y que los mismos son exigibles y así pueden ser recobrados aunque no haya sido mencionadas en la sentencia. *Riley v. Rodríguez Pacheco* 141 D.P.R. 139(1996); *Quiñones López v. Manzano Pozas* 124 D.P.R. 733 (1989).

Aplicando dicho precepto a la situación de autos concluimos que, dada la naturaleza civil del procedimiento de confiscación y ejecución de una fianza criminal, y, toda vez que una sentencia confiscatoria de aquella tiene como consecuencia principal la imposición del pago de una suma de dinero, impuesta al fiador en virtud de su incumplimiento con la obligación contraída en el

---

**12** ...continuación

**pues los términos del contrato de fianza, la obligación del Estado se circunscribe a aquella de una deuda monetaria, la de cobrar del fiador la garantía pactada.**

contrato de fianza, la misma está sujeta al pago de los intereses legales dispuestos en la antedicha regla.

Ciertamente, la imposición de intereses legales no constituye un castigo a las compañías fiadoras, sino que es un derecho que le asiste a la parte acreedora de un crédito exigible. Desde luego, si el fiador no quiere pagar intereses, lo que procede es pagar el monto de la fianza pactada tan pronto se dicte la sentencia confiscatoria, o consignar su importe en el tribunal oportunamente.

## V

Por los fundamentos antes expuestos, revocamos el dictamen del Tribunal del Circuito de Apelaciones y el del Tribunal de Primera Instancia al denegar la imposición de los intereses legales provistos en la Regla 44.3 de Procedimiento Civil, *supra*, y decretamos el pago de dichos intereses sobre la sentencia confiscatoria de la fianza criminal.

Se dictará sentencia de conformidad.


Baltasar Corrada del Río
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.

Oscar MartínezHernández

                    CC-2002-192 Certiorari

       v.

Compañía de Fianzas de

P.R.

    Recurrida


**SENTENCIA**


San Juan, Puerto Rico a 22 de enero de 2003.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca el dictamen del Tribunal del Circuito de Apelaciones y el del Tribunal de Primera Instancia al denegar la imposición de los intereses legales provistos en la Regla 44.3 de Procedimiento Civil, y se decreta el pago de dichos intereses sobre la sentencia confiscatoria de la fianza criminal.

    Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no intervino.


                  Patricia Otón Olivieri
              Secretaria del Tribunal Supremo